**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

MICHAEL GRIFFIN,

    Plaintiff,

-vs-                                                    Case No.  8:11-cv-1524-FtM-29SPC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## ORDER

This matter comes before the Court on the Plaintiff, Michael L. Griffin's Complaint seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. # 1) filed July 8, 2011, in the Middle District of Florida, Fort Myers Division. The Plaintiff filed his Memorandum of Law in support of the Complaint (Doc. # 19) on January 4, 2012. The Commissioner filed a Memorandum of Law in Support of the Commissioner's Decision (Doc. # 21) on March 5, 2012.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

## FACTS

*Procedural History*

Plaintiff filed an application for a period of disability and disability insurance benefits on May 20, 2008, alleging he became unable to work on December 31, 2002.. (Tr. 12105-11).[1] The claim was denied, initially, on July 17, 2008, and again upon reconsideration on January 15, 2009. (Tr. 12). Plaintiff then filed a request for hearing on March 18, 2009. (Tr. 12).  On June 7, 2010, Administrative Law Judge (ALJ) Dores D. McDonnell, Sr., held a hearing.  After the hearing, the ALJ issued a decision denying the Plaintiff's claim.  (Tr. 12-19).

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. (Tr. 1-6).  Therefore, the decision of the Commissioner became final.  Having exhausted all administrative remedies, the Plaintiff timely appeals from the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## *Plaintiff's History*

Plaintiff was born March 7, 1953, making him forty-nine years old at the time of the alleged onset date. (Tr. 18).  Plaintiff has a college education and past relevant past work as an insurance manager. (Tr. 123-24, 127). Plaintiff alleges disability due to a concussion, lower back and neck injuries, depression, and tinnitus. (Tr. 122)

## *Medical History*

Plaintiff's medical history of tinnitus dates back to an automobile accident in 1996. (Tr. 16). Dr. Krishna Moorthy treated Plaintiff after this accident and indicated that Plaintiff had sustained injuries to his neck and back. (Tr.16). While an MRI indicated lateral protrusion at the C3 to C4 level, Dr. Moorthy reported no neurological abnormalities, no paravertebral muscle spasms and no

---

[1] Plaintiff filed an earlier disability application in 2001 that was denied by another ALJ. (Tr. 84-98).  Plaintiff did not appeal this decision; thus it became final.  See 20 C.F.R. § 404.955 (2011).

abnormal sensory, motor, or reflex responses. (Tr. 16-17). In her final impression, Dr. Moorthy noted that Plaintiff had experienced a chronic cervical and lumbar strain. (Tr. 17).

Plaintiff then began receiving treatment from Dr. Sharad Lakdawal in July 1999. (Tr. 17). On April 10, 2001, Plaintiff visited Dr. Lakdawal. During this visit, Plaintiff complained of continual ringing in his ears and the inability to sleep. (Tr. 221). Hoping to resolve the ringing and inability to sleep, Dr. Lakdawal prescribed Plaintiff Trazadone. (Tr. 221). However, on October 2, 2001, Plaintiff, when visiting Dr. Lakdawal again, complained that he could not sleep well when taking Trazadone and had stopped taking the drug. (Tr. 216). On February 7, 2002, Plaintiff still could not sleep and the ringing in his ears had become worse; a complaint he reiterated when he visited Dr. Lakdawal again on May 2, 2002. (Tr. 216).

Plaintiff visited Dr. Lakdawal on May 27, 2003, and continued to complain of an inability to sleep. (Tr. 215). Dr. Lakdawal, on August 14, 2003, stated that Plaintiff was doing well despite the continued ringing in his ears, back pain, and depression. (Tr. 215). On November 15, 2003, Dr. Lakdawal maintained that Plaintiff was doing well on his current medication. Specifically, Dr. Lakdawal noted although the ringing in his ear affected his sleep, Plaintiff was sleeping better. (Tr. 215). Finally, on April 20, 2004, Plaintiff visited Dr. Lakdawal again with the doctor noting essentially no change in the Plaintiff's condition. (Tr. 213).

*Administrative Law Judge's Decision*

After consideration of the record and all the evidence, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 31, 2002, through the date last insured. (Tr. 12). In reaching this decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act on June 30, 2004. The ALJ found that Plaintiff had

not engaged in substantial gainful activity from December 31, 2002, through his last date insured of June 30, 2004. (Tr. 14).

Through the last date insured, the ALJ found that Plaintiff suffered from degenerative disc disease. (Tr. 14). The ALJ classified Plaintiff's disc disease as a severe impairment. (Tr. 14). In classifying the disc disease as severe, the ALJ noted that the disease limited Plaintiff's ability to perform basic work-related activities. (Tr. 14). However, the ALJ did not label Plaintiff's depression and anxiety, singularly or together, a severe impairment. (Tr. 14). As grounds, the ALJ noted that even with these symptoms, Plaintiff could perform basic mental work. (Tr. 14).

When considering Plaintiff's degenerative disc disease, the ALJ found the impairment did not meet or medically equal the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 15). Although giving consideration to the listing concerning the musculoskeletal system, the ALJ found the evidence did not approach the level of severity set forth in any listing. (Tr. 15). The ALJ noted that no treating or examining medical source reported findings in severity equal to the criteria of any listed impairment, nor did any State agency medical consultant determine that Plaintiff's impairments met the criteria of any listing. (Tr. 16).

Accordingly, the ALJ found that from the alleged onset date through the date last insured, Plaintiff had a residual functioning capacity to perform a full range of light work as defined in 20 C.F.R. § 404.1567(b). (Tr.16). In arriving at this determination, the ALJ considered all Plaintiff's symptoms and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence. (Tr. 16). The ALJ also considered medical opinions from acceptable medical sources. (Tr. 16). The ALJ found evidence of the underlying impairments and the resulting limitation complained of by Plaintiff. (Tr. 16). However, the frequency, intensity, and duration of

symptoms complained of by Plaintiff were found to be inconsistent with the evidence and not fully credible. (Tr. 16). Specifically, the ALJ noted Plaintiff's lack of medical treatment, evidence, and work history as the main factors affecting Plaintiff's credibility. (Tr. 17).

As such, the ALJ found that Plaintiff could lift twenty (20) pounds occasionally and lift ten (10) pounds frequently. (Tr. 16). Furthermore, the ALJ found that Plaintiff could sit, stand, and walk six (6) hours in an eight (8) hour work day. (Tr. 16). The ALJ found that Plaintiff had no limitations in his ability to push or pull with hand or foot controls. (Tr. 16). Additionally, the ALJ found that Plaintiff possessed the ability to interact with co-workers, supervisors, and the general public appropriately. (Tr. 16). Finally, the ALJ found that Plaintiff could hear, understand, remember, and carry out simple routine and complex work instructions thereby enabling him to engage in light work. (Tr. 16).

Because of Plaintiff's ability to engage in light work, the ALJ found Plaintiff capable of performing past relevant work as an insurance manager. (Tr. 18). Specifically, the ALJ concluded that Plaintiff's past work, which he classified as sedentary work, did not require work-activity, which Plaintiff's residual functioning capacity precluded him from doing. (Tr. 18). The ALJ made other alternative findings regarding Plaintiff's ability to engage in past relevant work. Specifically, the ALJ noted that despite Plaintiff's age, Plaintiff had acquired work skills from past relevant work, which is transferable to other occupations in the national economy. (Tr. 18). In making both these determinations, the ALJ considered Plaintiff's residual functioning capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines. (Tr. 18). After considering all of the aforementioned factors, the ALJ found that Plaintiff was not disabled at any time from December 31, 2002, the alleged onset date, through June 30, 2004, the date last insured.

## **THE STANDARD OF REVIEW**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Commissioner, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[2] 20 C.F.R. §§ 404.1520(a), 404.920(a). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838–39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence

---

[2] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
  *Step 1*. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
  *Step 2*. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
  *Step 3*. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.
  *Step 4*. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
  *Step 5*. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f).

as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F. 3d at 1240 n.8; Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1439 (11th Cir. 1997).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The Plaintiff asserts that the ALJ erred as follows: (1) the ALJ failed to consider the Plaintiff's Tinnitus as a severe impairment; (2) the ALJ failed to properly document his credibility analysis; and (3) the ALJ failed to give *res judicata* effect to the prior ALJ's findings. The Commissioner argues that the ALJ's decision was supported by substantial evidence in the record.

*1. Whether the ALJ Erred at Step Two of the Sequential Evaluation by Finding Plaintiff's Tinnitus Condition Not a Severe Impairment*

Plaintiff alleges that the ALJ's failure to classify Plaintiff's tinnitus as a severe impairment and his failure to explain why the condition was not severe is grounds for remand. Plaintiff argues that his tinnitus, in fact, is a severe condition. Specifically, Plaintiff argues that the ALJ's decision

must discuss Plaintiff's complaints.

At the second step in the evaluation process, the ALJ is to "consider the medical severity of the [Plaintiff's] impairments." 20 C.F.R. § 404.1520(a)(4)(ii). At step two, the plaintiff bears the burden of proving the existence of a severe impairment. Hardenbrook v. Astrue, 2011 WL 4031098 * 4 (M.D. Fla. Aug. 3, 2011) (citing Brown v Yuckert, 482 U.S. 137, 146, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)). In considering an alleged impairment, the ALJ must evaluate evidence about its "functionally limiting effects" to determine how it affects the claimant's ability to do basic work activities. Social Security Ruling ("SSR") 96–3p. At step two, the ALJ is not required to identify all possible severe impairments. Heatly v. Commissioner of Social Sec., 382 F. App'x 823 (11th Cir. 2010). Instead, the only requirement of step two is to identify if a severe impairment exists. Hardenbrook, 2011 WL 4031098 at *4. Plaintiff bears the burden of putting forth evidence that he is disabled by one or more severe impairments. See 20 C.F.R. § 404.1512(a). An impairment is non-severe if it "is a slight abnormality which has such a minimal effect on the individual that it could not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). Likewise, the applicable regulations provide that an impairment is non-severe if it "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).

Although Plaintiff claims that the ALJ failed to adequately address his alleged tinnitus, the ALJ acknowledged in his decision that Plaintiff testified that he had ringing in his ears. (Tr. 16, 32). The ALJ noted that in determining Plaintiff's RFC he considered all symptoms. (Tr. 16). He further noted the ringing in Plaintiff's ears since the auto accident which occurred in 1996. (Tr. 16). The ALJ went on to state though that an examination of the medical evidence of record indicated very

limited treatment. (Tr. 16). Even though the record indicates that Plaintiff complained of ringing in his ears, he fails to show how this evidence documents that the ringing in his ears significantly limited his ability to do basic work activities, which was actually belied by the treatment records, as noted by the ALJ. (Tr. 16-17, 213-16). See 20 C.F.R. § 404.1521(a).

Even if Plaintiff satisfied his burden, any failure by the ALJ to consider the impairment is harmless error. The Eleventh Circuit has applied the harmless error doctrine in social security cases. *See, e.g.*, Diorio v. Heckler, 721, F.2d 726, 728 (11th Cir. 1983); Smyre v. Astrue, 2011 WL 307694, *4 (M.D. Fla. Jan. 28, 2011); Heatly, 382 F. App'x at 825. As the Court in Ware v. Schweiker stated, "[j]udicial review is not for the purpose of exacting punctilio but to assure that the Secretary's determination does not trespass the statute." 651 F.2d 408, 413 (5th Cir. 1981). Accordingly, the Eleventh Circuit has applied the harmless error doctrine in cases where the ALJ failed to consider whether all of the claimant's impairments are severe. Smyre, 2011 WL 307694 at *4; Heatly, 382 F. App'x at 825. In doing so, the court has noted that any severe impairment, regardless of whether the impairment resulted from a single impairment or combination of impairments, which qualify as severe, satisfies step two. Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). Consequently, if a severe impairment at step two of the evaluation exists, the ALJ's failure to consider whether other symptoms are severe is harmless. Heatly, at 824-25.

In this instance, the ALJ found that Plaintiff's degenerative disc disease constituted a severe impairment. (Tr. 14). The ALJ specifically stated that, "[t]hrough the date last insured, the claimant had the following severe impairment: degenerative disc disease." (Tr. 14). Since the ALJ found that Plaintiff had a severe impairment and consequently moved on to Step 3 in the sequential analysis, his failure to consider other impairments, such as Plaintiff's tinnitus, is harmless. Heatly, 382 F.

App'x at 824-25; (Tr. 14). The finding of a severe impairment is all that step two requires, and the ALJ found a severe impairment. *See* id.; (Tr. 14). Just as in Heatly, the ALJ found Plaintiff's back disease constituted a severe impairment and his failure to indicate whether Plaintiff's tinnitus was a severe impairment is harmless error. Thus, substantial evidence supports the ALJ's decision on this issue.

### *2. Whether Substantial Evidence Supports the ALJ's Finding that Plaintiff's Statements Concerning the Intensity, Persistence, and Limiting Effects of His Symptoms are Not Credible*

Next, Plaintiff argues that the ALJ failed to articulate specific reasons for questioning Plaintiff's credibility. In his decision, The ALJ found that, although Plaintiff's medicably determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible. (Tr. 16). The ALJ stated that, "[t]he objective medical evidence does not confirm the severity of the alleged pain, nor does the weight of the medical evidence and non-medical evidence demonstrate the presence of an impairment that reasonably could be expected to produce pain and functional limitation to the degree alleged by the claimant." (Tr. 16).

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); Jones v. Dept. of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Hale v. Bowman, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986). As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. Foote, 67

F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court)).

In this case, the ALJ found that, although Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible. (Tr. 16). In so finding, the ALJ considered the fact that prior to the date Plaintiff was last insured for disability benefits, Plaintiff had very little treatment for his alleged impairments. (Tr. 16). See 20 C.F.R. §§ 404.1527(d)(2)(ii), 404.1529(c)(3)(v). For instance, as noted by the ALJ, the record showed Plaintiff received treatment from Dr. Robert Martinez once every few years. (Tr. 16, 175-78, 197, 202, 317-22). However, none of these appointments occurred during the relevant time period. (Tr. 16, 175-78, 197-202, 317-18). The ALJ went on to note that Dr. Martinez treated Plaintiff in March 2002 and then again in September 2006. (Tr. 16, 197-202, 317-18). In April 2003, Dr. Krishna Moorthy, submitted a statement indicating that she had treated Plaintiff since an automobile accident in 1996, in which Plaintiff sustained injuries to her neck and back. (Tr. 16, 194-96). Dr. Moorthy indicated that an MRI revealed lateral protrusion at the C3 to C4 level. (Tr. 16, 194). Dr. Moorthy reported no neurological abnormalities and found no paravetebral muscle spasm, and no abnormal sensory, motor, or reflex responses. (Tr. 16-17, 195). Plaintiff's gait, grip strength, and fine

manipulation were normal. (Tr. 17, 195). No motor deficits were found. (Tr. 17, 195). Dr. Moorthy's impression was chronic cervical and lumbar strain (Tr. 17, 195). At most, Plaintiff met with Dr. Moorthy once, which as the ALJ stated, "such sparse treatment is inconsistent with the claimant's allegations of constant pain." (Tr. 17). Consequently, the little medical evidence the ALJ received from Dr. Moorthy indicated that Plaintiff was within normal limits. (Tr. 17).

Finally, the ALJ noted that Plaintiff received limited and sparse mental health treatment from Dr. Lakdawal. (Tr. 17). Plaintiff takes issue with the ALJ's findings that Plaintiff received sparse treatment from Dr. Lakdawal. Specifically, Plaintiff states that he visited Dr. Lakdawal at least six times during the time frame at issue in this case. (Doc. # 19, p. 10). The ALJ concluded that no support existed to aid the Plaintiff's claims because Dr. Lakdawal treated Plaintiff sporadically. (Tr. 17).

Based on the Plaintiff's sparse medical treatment, the ALJ concluded that the medical evidence on record did not support Plaintiff's subjective pain complaints. (Tr. 17). Accordingly, the ALJ found:

> [t]he claimant's allegations have not been accepted as entirely credible, The most significant factor regarding credibility is the claimants's lack of treatment and the corresponding lack of medical evidence. There isn't a single MRI from the period at issue in the medical evidence of record. At most the claimant visited Dr. Moorthy once and Dr. Lakdawal once. Such sparse treatment is inconsistent with the claimant's allegations of constant pain.

(Tr. 17). The ALJ did not in err by relying on the Plaintiff's sparse medical treatment to support his credibility findings. See Merchant v Commissioner, 2007 WL 4482580, at *8 (M.D. Fla. Dec. 18, 2007) (affirming the ALJ's decision that the lack of objective evidence and sparse medical treatment supported a finding that the claimant's pain complaints were not credible). In this case, the ALJ delineated how he came to this determination by noting the lack of treatment records in the decision.

Thus, the Plaintiff's argument that the ALJ erred by using the Plaintiff's sparse medical treatment to support the credibility finding lacks merit.

In addition, the ALJ assessed Plaintiff's credibility regarding his prior work history. (Tr. 17). The ALJ noted that Plaintiff testified that he did not work after 1996. (Tr. 17). However, Plaintiff's earning records indicate earnings of $32,188.59 in 1999. (Tr. 17). The ALJ also noted that Plaintiff volunteered at his child's school in 2004. (Tr. 2004). The ALJ found that Plaintiff's volunteering at his child's school indicates that after the alleged onset date, the Plaintiff possessed the capacity to engage in work. (Tr. 17).

The Court finds that substantial evidence supports the ALJ's decision that Plaintiff's prior work history and sporadic medical treatment affects the credibility of Plaintiff's subjective complaints of the frequency, duration, and intensity of his symptoms. Where the ALJ supports his credibility finding with substantial evidence from the record, the Court will not disturb the finding. Foote v Chater, 67 F. 3d 1553, 1562 (11th Cir. 1995).

### 3. Whether Administrative Res Judicata Applied to a Previous ALJ's Residual Functional Capacity Determination

Finally, Plaintiff contends that the ALJ's decision should be reversed because the ALJ failed to use the prior residual functional capacity determination made by the ALJ in the initial denial of Plaintiff's claim on March 21, 2001. (Doc. #19, p. 11). The Social Security Act directs that "[t]he findings and decisions of the Commissioner . . . after a hearing shall be binding upon all who were parties to such hearing." 42 U.S.C. § 405(h). In accordance with the Act, the Commissioner's regulations direct that *res judicata* applies where the Commissioner has made a previous final decision based on the "*same facts and the same issue or issues*." 20 C.F.R. § 404.957(c)(1) (emphasis added).

Here, the Plaintiff argues that a prior ALJ's findings of fact are subject to *res judicata* and in doing so urges the court to follow the non-binding Fourth Circuit's position in <u>Lively v. Bowen</u>, 858 F.2d 177 (4th Cir. 1988), and in <u>Albright v. Commissioner</u>, 174 F.3d 473 (4th Cir. 1999). Plaintiff acknowledges that the current ALJ is not bound by the finding of the prior ALJ, but "the decision should have at least been discussed." Pl.'s Br. at 14.

In <u>Lively</u>, the ALJ denied the plaintiff disability benefits under the Social Security Act on October 19, 1981. <u>Lively</u>, 858 F.2d at 179. Shortly after the denial, on November 3, 1981, the plaintiff turned fifty-five (55), which because of his age and background, resulted in the grid rules classifying plaintiff as disabled. <u>Id</u>. The plaintiff subsequently filed for disability benefits again on December 14, 1983, and was denied again by a second, different ALJ. <u>Id</u>. In reversing the district court, the Fourth Circuit held, "[i]t is utterly inconceivable that his condition had so improved in two weeks as to enable him to perform medium work." <u>Id</u>. Initially, the Court notes that neither <u>Lively</u> or <u>Albright</u> are Eleventh Circuit cases and are not binding on this Court. Further, the facts in <u>Lively</u> and <u>Albright</u> are clearly distinguishable from this case. In <u>Lively</u>, the Court was considering the same time period and the same conditions and circumstances. Here, however, the ALJ was not considering the same time frame, facts, and alleged onset date for Plaintiff's claim but a new onset date that occurred twenty-one (21) months after the initial decision denying the Plaintiff's initial claim, which was issued on March 29, 2001. (Tr. 84-98).

Contrary to the <u>Lively</u> and <u>Albright</u> decisions relied on by the Plaintiff, the Eleventh Circuit has held that *res judicata* does not attach to cases where "the factual time period for [the claimant's] current application is different from [the] previous application." <u>Luckey v. Astrue</u>, 331 F. App'x 634, 638 (11th Cir. 2009); <u>McKinze v Commssioner</u>, 362 F. App'x 71, 73 (11th Cir. 2010) (holding that an ALJ should not consider prior applications when the instant application involves a different

-14-

period of time than that alleged in the prior application). Consequently, the Court finds Lively and Albright are not applicable to the instant case given Eleventh Circuit precedent regarding administrative issue preclusion.

Furthermore, the Social Security Administration's (SSA) Acquiescence Ruling 97-4(9) supports the Commissioner's decision that *res judicata* did not attach to this case. The Ruling, states in pertinent part:

> if a determination or decision on a disability claim becomes final, the Agency may apply administrative res judicata with respect to a subsequent disability claim.... However, if the subsequent claim involves deciding whether the claimant is disabled during a period that was not adjudicated in the final determination or decision on the prior claim, SSA considers the issue of disability with respect to the unadjudicated period to be a new issue that prevents the application of administrative res judicata. Thus, when adjudicating a subsequent disability involving an unadjudicated period, SSA considers the facts and issues de novo in determining disability with respect to the unadjudicated period. SSA does not adopt findings from the final determination whether the claimant is disabled with respect to the unadjudicated period. Acquiescence Ruling 97-4(9).

In this case, Plaintiff's current application concerned an unadjudicated time period; thus, the current ALJ did was not bound by the previous ALJ's findings. (Tr. 84-98, 105). See McKinzie, 362 F. App'x at 73; see also Guerrero v. Astrue, 2010 WL 3360603, at *3 (M.D. Fla. Aug. 25, 2010) (finding *res judicata* inapplicable when the plaintiff's current claim concerns a different time period than in his childhood application).

Based on the above principles, in this case the doctrine of *res judicata* does not apply to bind the current ALJ to the findings made by the prior ALJ in the March 2001 decision. Therefore, the ALJ in the instant case need not consider the prior RFC finding made by the previous ALJ.

## **CONCLUSION**

As the Court has determined that the ALJ's decision is supported by substantial evidence on

all issues presented by the Plaintiff, the decision of the Commissioner will be affirmed.

Accordingly, it is now

**ORDERED**:

The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and **CLOSE** the file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___2nd___ day of August, 2012

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record